## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

```
_____
                                   )
MAYDA COLON TSAKNIS,               )
                                   )
                Plaintiff,         )
                                   )
          v.                       )  Civil Action No. 05-320 (EGS)
                                   )
UNITED STATES OF AMERICA, et al.,  )
                                   )
                Defendants.        )
_____)
```

### MEMORANDUM OPINION

Peter Tsaknis died on March 28, 2002, after suffering from colon cancer and undergoing chemotherapy treatment.  Widow Mayda Tsaknis brings this medical malpractice action, seeking damages allegedly caused by negligence on the part of the federal government and Walter Reed Army Medical Center ("Walter Reed") due to Walter Reed's failure to timely diagnose the decedent's cancer and to administer proper chemotherapy treatment.

Pending before the Court are defendants' Motion to Dismiss, in Part, and for Summary Judgment in Part and plaintiff's Motion to Strike Declaration (Affidavit) of Thomas J. Jackson.  Upon consideration of the motions, the responses and replies thereto, the applicable law, and the entire record, the Court **GRANTS IN PART AND DENIES IN PART** defendants' motion and **DENIES AS MOOT** plaintiff's motion.  The Court **DENIES** dismissal of plaintiff's claims related to the decedent's chemotherapy treatment and

**GRANTS** summary judgment to defendants on plaintiff's claims related to Walter Reed's failure to timely diagnose the decedent's cancer.

## I.    BACKGROUND

In February 2002, Peter Tsaknis was diagnosed with and treated for colon cancer by defendant Walter Reed.  Although a Walter Reed physician had issued a referral for a sigmoidoscopy in January 2000 and recommended that Tsaknis use this to get screened for colon cancer, Tsaknis did not undergo any colon cancer screening until two years later.  Immediately following the cancer diagnosis in February 2002, physicians at Walter Reed performed surgery on Tsaknis.  Walter Reed's physicians administered chemotherapy to treat the colon cancer shortly thereafter.

On March 21, 2002, Tsaknis went to Walter Reed and complained of weakness and severe mouth and throat ulcers; he was admitted to Walter Reed on March 23, 2002.  As Tsaknis' condition deteriorated, he developed neutropenic enterocolitis (also called typhilitis) -- an ulcerative, life-threatening condition of the bowel -- and died from this condition on March 28, 2002.

The Chairman of Walter Reed's Oncology Department met with plaintiff Mayda Tsaknis, the decedent's widow and personal representative of his estate, in January and February 2003 to inform her that Walter Reed had administered larger doses than

2

intended of #5-fluoracil to her husband during his chemotherapy treatment.  At this time, the oncology chairman also informed Mrs. Tsaknis that her husband had lacked an enzyme necessary to protect his body against the toxicity of #5-fluoracil.

In May 2003, plaintiff's attorney attempted to file an administrative claim with Walter Reed pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671-80, by sending a letter alleging a total of $25,000,000 in damages to four claimants -- the estate of Peter Tsaknis, widow Mayda Tsaknis, son John Tsaknis, and daughter Cassandra Tsaknis -- resulting from negligent medical treatment by Walter Reed.  The letter specifically alleged that the claimants were injured by Walter Reed's failure to timely diagnose the decedent's colon cancer and by Walter Reed's administration of "excessive doses" of chemotherapy to the decedent.  Letter from Franklyn Glinn to Walter Reed (May 22, 2003), Pl.'s Ex. B at 3.

The following month, Walter Reed's claims attorney informed plaintiff's attorney that the letter did not qualify as a valid presentment of the claim within the meaning of the FTCA.  The claims attorney correctly identified deficiencies in the letter that prevented it from qualifying as a valid presentment -- namely, the four claimants filed together when they should have filed separately[1] and the letter did not include any proof of the

_____

[1] *See Muth v. United States*, 1 F.3d 246, 249 (4th Cir. 1993) ("[I]f there are multiple claimants in the matter, each claimant

attorney's authority to submit the claims on the claimants' behalf.[2]  The claims attorney mailed four blank standardized claim forms to plaintiff's attorney and requested that the claimants also include medical expert opinions regarding any allegations of medical malpractice.

Using the forms and instructions sent by Walter Reed's claims attorney, plaintiff's attorney successfully presented Walter Reed with valid administrative claims in January 2004. The materials submitted to Walter Reed included medical expert opinions as well as plaintiff's own description of the nature of the injury and the basis of the claims.  In particular, the materials discussed the late diagnosis of the decedent's colon cancer, the effects of the subsequent chemotherapy treatment, and the decedent's enzyme deficiency that left his body vulnerable to the toxicity of #5-fluoracil.  Letter from Franklyn Glinn to Walter Reed (Jan. 22, 2004), Pl.'s Ex. D at 23, 25-38.

Upon denial of the administrative claims, plaintiff filed suit in this Court in February 2005, alleging damages resulting from Walter Reed's failure to timely diagnose the decedent's colon cancer and from Walter Reed's improper administration of chemotherapy treatment.  After discovery ended in September 2006,

---

must 'individually satisfy the jurisdictional prerequisite of filing a proper claim, unless another is legally entitled to assert such a claim on their behalf.'") (citation omitted).

[2] *See* 28 C.F.R. § 14.2(a).

defendants filed a motion seeking summary judgment on the late diagnosis claim and dismissal of the chemotherapy treatment claim for lack of subject matter jurisdiction.  Plaintiff subsequently filed a motion to strike a declaration offered in support of defendants' reply.  Because plaintiff has withdrawn her late diagnosis claim and does not oppose defendants' motion for summary judgment on this claim, *see* Pl.'s Opp'n at 2, and because plaintiff's motion to strike is moot, the only issue left for this Court to consider is whether the negligent chemotherapy treatment claim should be dismissed.

## II.  LEGAL STANDARD FOR DISMISSAL UNDER FED. R. CIV. P. 12(b)(1)

A party seeking adjudication of a claim in federal court bears the burden of showing that the Court has subject matter jurisdiction over the action.  *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936).  In evaluating a motion to dismiss for lack of subject matter jurisdiction, the Court must accept all factual allegations in the complaint as true and construe all reasonable inferences in plaintiff's favor.  *Sweeney v. Am. Registry of Pathology*, 287 F. Supp. 2d 1, 3 (D.D.C. 2003) (citing *Harris v. Ladner*, 127 F.3d 1121, 1123 (D.C. Cir. 1997)).  "[W]here necessary, the court may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."  *Herbert v. Nat'l Acad. of Scis.*

974 F.2d 192, 197 (D.C. Cir. 1992).  This Court "has interpreted
*Herbert* to allow a court to 'consider such materials outside the
pleadings as it deems appropriate to resolve the question whether
it has jurisdiction to hear the case.'"  *Sweeney*, 287 F. Supp. 2d
at 3 (Friedman, J.) (citations omitted); *see also Ass'n of Merger
Dealers*, *LLC v. Tosco Corp.*, 167 F. Supp. 2d 65, 69 (D.D.C. 2001)
(Hogan, C.J.).

## III. ANALYSIS

### A.   Motion to Dismiss for Lack of Subject Matter Jurisdiction

Upon review of the record in this case, the Court finds that
plaintiff's January 2004 presentment to Walter Reed provided
sufficient notice of the negligent chemotherapy treatment claim.
As a result, this Court has jurisdiction to adjudicate that
claim.  Under the FTCA,

> An action shall not be instituted upon a claim against
> the United States for money damages for injury or loss of
> property or personal injury or death caused by the
> negligent or wrongful act or omission of any employee of
> the Government while acting within the scope of his
> office or employment, *unless the claimant shall have
> first presented the claim to the appropriate Federal
> agency* and his claim shall have been finally denied by
> the agency . . . .

28 U.S.C. § 2675(a) (emphasis added).  For a claim to qualify as
"presented" within the meaning of the statute, a plaintiff must
meet a burden of "minimal notice" by submitting to the
appropriate agency a written statement "sufficiently describing

the injury to enable the agency to begin its own investigation"
and containing a "sum-certain damages claim." *GAF Corp. v.
United States*, 818 F.2d 901, 919-20 (D.C. Cir. 1987).  However,
plaintiffs are not required to substantiate their claims to the
agency's satisfaction because the FTCA "did not shift ultimate
responsibility for the adjudication of federal liability from the
courts to the agencies, nor did it provide the agencies with
leverage to impede claimant access to the courts."  *Id.* at 917.
Rather, the presentment requirement is intended to benefit
plaintiffs by expediting settlement in cases where settlement is
appropriate, thus avoiding the burden and cost of filing a
lawsuit.  *Id.* at 917-18.

*Rise v. United States*, 630 F.2d 1068 (5th Cir. 1980), is
factually on point and illustrates how minimal notice can be
under the FTCA presentment requirement.  In *Rise*, the plaintiff
submitted an administrative claim stating that "the negligence of
Army physicians in failing to diagnose and treat Mrs. Rise in
December 1972 and January 1973 caused her death . . . ."  *Id.* at
1070.  When the plaintiff subsequently filed suit, his amended
complaint alleged in part that "the Army's referral of Mrs. Rise
to South Fulton Hospital [in May 1973] and . . . its subsequent
failure to supervise her treatment there were actionable
negligence."  *Id.*  The defendant challenged the court's
jurisdiction over the claims of negligent referral and failure to

supervise, arguing that these claims were not presented in the plaintiff's administrative filing.  *Id.*  The court disagreed, however, finding that the mention in the administrative filing of Mrs. Rise's transfer to South Fulton Hospital in May 1973 provided sufficient notice that the defendant's referral and failure to supervise "were part of the chain of events that culminated in Mrs. Rise's death."  *Id.* at 1071.  The court reasoned that "if the Government's investigation of Rise's claim should have revealed theories of liability other than those specifically enumerated therein, those theories can properly be considered part of the claim."  *Id.*

### 1.   Notice of negligent chemotherapy treatment claim

Similarly to *Rise*, plaintiff's January 2004 submission to Walter Reed provided enough information about the negligent chemotherapy treatment claim to meet the presentment requirement of minimal notice.  In this submission, plaintiff included the date of the decedent's death as the "date and day of accident," indicating that her submission encompasses treatment that the decedent received from Walter Reed up until his death.  Pl.'s Ex. D at 7, 11.  Plaintiff also described the nature of the injury forming the basis of her claim as "[t]he failure to timely diagnose *and treat* the colon cancer of Peter J. Tsaknis, which led to *internal burns caused by chemotherapy* which led to neutropenic enterocolitis."  *Id.* (emphasis added).  The attached

medical expert opinions described the chemotherapy treatment as follows:  "This patient experienced what was felt to be an exaggerated response to the chemotherapy *presumably* based on an unpredictable enzyme deficiency. . . . I would differ [sic] to the experience of the oncologists reviewing this case as to any *deviation from the usual course of such chemotherapy patients*," *id*. at 27 (emphasis added), and "[t]he advanced stage of the cancer required *chemotherapy whose morbidity caused the neutropenic enterocolitis* documented on the death certificate as a direct consequence of the colorectal carcinoma," *id.* at 31 (emphasis added).  Significantly, these medical expert opinions also included a two-page report describing in great detail the pain and suffering endured by the decedent as a direct result of the #5-fluoracil chemotherapy, which he had been treated with less than two weeks before his death.  *Id.* at 32-33.

These descriptions constitute sufficient notice to satisfy the FTCA presentment requirement because they provided enough information to allow Walter Reed to investigate the claim of negligent chemotherapy treatment.  Indeed, the Chairman of the Oncology Department at Walter Reed did investigate the decedent's chemotherapy treatment prior to his meeting with plaintiff.  *See* Second Am. Compl. ¶ 42.  Although Walter Reed correctly notes that its investigation of the chemotherapy treatment occurred before plaintiff presented her administrative claim, *see* Defs.'

Reply at 6-7, it does not directly follow that plaintiff's
January 2004 letter provided Walter Reed with insufficient notice
of the chemotherapy treatment claim.  In fact, Walter Reed's
medical claims attorney explained that plaintiff's January 2004
presentment "explicitly addressed COL Tsaknis' chemotherapy
treatment at Walter Reed following his diagnosis with cancer
. . . ."  Decl. of Thomas Jackson ¶ 2.

     Defendants assert that one sentence[3] negates the effect of
the medical expert opinions describing the painful and
exaggerated response that the decedent experienced after the
administration of #5-fluoracil chemotherapy treatment.  Reading
the sentence that defendant relies upon in the context of the
whole January 2004 submission, however, provides sufficient
notice of the chemotherapy treatment claim.  In *Bush v. United
States*, 703 F.2d 491, 495 (11th Cir. 1983), the court explained
that conflicting medical opinions are still sufficient to address
a claim administratively.  The plaintiff in *Bush* had submitted
with her administrative claim a medical report, which suggested
that the defendant should have operated sooner than it did but
then concluded that the late operation resulted in no harm to the
decedent.  The *Bush* court decided that it had jurisdiction over
the claim because "[t]he finding of no harm was but one of the

---

[3] "The treatment regimen offered to [the decedent] was standard
at the time and was administered in appropriate doses."  Pl.'s
Ex. D at 37-38.

many conflicting medical opinions that should have been weighed
by the trier of fact.  The claim may ultimately fail in a trial,
but that does not deprive the court of jurisdiction to consider
it."  *Id.*  Similarly to *Bush* and contrary to defendants'
contention, there is also a conflict in medical opinions
presented to Walter Reed.  While one portion of the expert
opinions states that the chemotherapy was administered in
appropriate doses, *see* Pl.'s Ex. D at 37-38, other portions refer
to the unusually severe effects that the decedent endured as a
result of the chemotherapy treatment, *see id.* at 27, 31-33.
Indeed, the very next sentence after the one relied upon by
defendants explains that the decedent "suffered extremely severe
toxicity from the chemotherapy, which resulted in his death."
*Id.* at 38.  As a result, the whole of information contained in
the January 2004 claim letter was sufficient to put Walter Reed
on notice of the chemotherapy treatment claim in spite of the
single sentence stating that the chemotherapy "was administered
in appropriate doses."  *Id.*

      **2.   Plaintiff's response to request for admission**

Defendants propounded requests for admissions upon plaintiff
during discovery, and plaintiff admitted that "[d]uring the
claims process, Plaintiffs did not submit an expert report that
alleged decedent's death was caused by excessive chemotherapy
administration."  Pl.'s Resp. to Defs.' Req. for Admis. ¶ 29.

11

Defendants argue that these expert opinions cannot be used to show that the Court has jurisdiction over the negligent chemotherapy treatment claim because plaintiff's "admission is factually and legally conclusive." Defs.' Reply at 4.

Plaintiff's admission may affect her case at trial because the admission makes it more difficult for plaintiff to show a causal link between negligent chemotherapy treatment and the decedent's death. However, this admission is inapposite in determining whether the court has jurisdiction over the claim because there is no need to substantiate a claim by showing causation at the presentment stage. In *Bush*, 703 F.2d at 494-95, a medical report concluding that the decedent's death was not caused by the defendant's delayed post-operative treatment did not deprive the court of jurisdiction when it was submitted as part of the administrative claim. Similarly, plaintiff in this case admits that she "did not submit an expert report [during the claims process] that alleged decedent's death *was caused* by excessive chemotherapy administration." Pl.'s Resp. to Defs.' Req. for Admis. ¶ 29 (emphasis added). Although this admission may prove damaging to plaintiff's case at trial by making it more difficult to prove causation, it does not deprive the Court of jurisdiction to adjudicate the claim.

Regardless of what ultimately caused the decedent's death, the statements describing the decedent's extreme pain resulting

12

from the chemotherapy treatment were sufficient to enable Walter Reed to begin investigation of the chemotherapy treatment -- particularly the statement by the medical expert deferring to the knowledge of Walter Reed's oncologists as to "any deviation from the usual course of such chemotherapy patients,"  Pl.'s Ex. D at 27.  As a result, this Court has subject matter jurisdiction over the claim alleging negligent chemotherapy treatment.

### B.   Motion to Strike Declaration of Thomas J. Jackson

Plaintiff also filed a motion to strike the declaration of Thomas J. Jackson, which was offered in support of defendants' reply to plaintiff's opposition to defendants' motion to dismiss. Because the Court has concluded that plaintiff has sufficiently presented a claim at the administrative level to confer jurisdiction on this Court, plaintiff's motion to strike is **DENIED AS MOOT.**

## IV.  CONCLUSION

For the reasons enumerated above, the Court concludes that summary judgment in favor of defendants is appropriate as to the late diagnosis claim and that dismissal is inappropriate as to the negligent chemotherapy treatment claim.  Accordingly, the Court **GRANTS IN PART AND DENIES IN PART** defendants' Motion to Dismiss, in Part, and for Summary Judgment in Part.  Further, the Court **DENIES AS MOOT** plaintiff's Motion to Strike Declaration

13

(Affidavit) of Thomas J. Jackson.  An appropriate Order

accompanies this Memorandum Opinion.


**Signed:**       **EMMET G. SULLIVAN**
                 **UNITED STATES DISTRICT JUDGE**
                 **June 6, 2007**